This will be called as previously announced and the times will be as allotted. The first case today is United States v. Noor, 18-1498. Noor Mohamed. Ms. Bunker. Good morning, Your Honors. May it please the Court, Renee Bunker. Before you get started, he's no longer in federal custody. That's correct, Your Honor. He is in state custody. He's facing very serious state charges. He is in state custody on attempted murder charges, among others. Are you serious that the federal government will try to get him back from the state on a federal resentencing that might put him in federal prison for longer than the period he has already served? I think that, Your Honor, upon our – obviously, the legal question here presented is significant. We submit neither party has said it's – Yeah, I understand you don't like the old Vera case and you'd like to get it reversed, but, you know, it's a crapshoot for you whether you would or would not accomplish that result. Right, and Judge Torreson made clear – she said three or four times that this was a close call and she warned Mr. Mohamed he might be back for – We submit that Judge Torreson obviously can and may impose the very same sentence of time served at this juncture. He would still have a supervised release three-year term down the line. But that – with that caveat in mind, yes, we would ask that the court proceed to the merits of the issue given the importance of the legal issue presented. Regardless of whether the government's going to – One of the arguments you make is if you look at the Shepard documents in this case, they establish that when he pled guilty to this crime of distribution as defined by the main statute, that, in fact, the facts did not allow for the use of a permissible inference. And if you look at the Shepard documents, that then tells you that this case does not really raise the Olivera issue. I'd like you to start with that, please. Our position, first and foremost, is that this court's – for the last 28 years, the Supreme Court has emphasized that this court's focus and the district court's is on the categorical approach, which means it's – or modified categorical approach, which is an elements-centric focus. So our first argument throughout is that entirely discretionary, permissible inference during instruction that may never, ever issue at a trial or may never, ever factor into a guilty plea is not an element of the offense. Okay. There's two different arguments. One is, at most, this is a permissible inference from the evidence. It is not an element of the crime. Correct? That's correct. And the other is, because it's no more than a permissible inference, one should not assume that the statutory definition of the crime necessarily relies on that inference. Under main law, it absolutely does not rely on the inference, because if you look at the jury instruction 6-13, which is in our Addendum at page 18, the jury, following the instructions, would be instructed, one, that they could reject it. Upwards of four times they're told that. And they're reminded that whether you accept or reject the inference, the state must prove each and every element of the offense. Under the elements-based approach, we look at the least of the conduct that would satisfy the element. Is that right? The least of the conduct – crime of conviction. Correct. The least of the conduct that would satisfy the element at issue. Exactly. And the element at issue here is intent to distribute? Correct. Okay. What is the least of the conduct that main allows to satisfy intent to distribute? Intent to distribute is the least? The least of the conduct that satisfies that element. No, I think that's where the court – There's got to be an answer to that question. What is the least of the conduct that main allows to satisfy that element? I don't even know how to answer that, Judge Barron, because – Well, how about this? Does a speck of cocaine satisfy the element? The element is not based on drug quantity at all. It's based on intent to distribute. To intent to distribute, one has to engage in some conduct to satisfy that element. Correct? Correct. Okay. What is the least of the conduct that would satisfy it? Would possession of a speck of cocaine satisfy it? Theoretically, correct. In terms of hypothetical, I've never seen a case like that. In fact, in main it would not because it would not be a permissible inference to say that because I have a speck, I intended to distribute. Well, I think, Judge Barron, with all due respect, a speck would never implicate the inference instruction that troubled the court here. I possessed four grams of cocaine base. Would that be enough to satisfy the element in main? Possession alone is not enough to satisfy the element in main. The element is intent to distribute. Correct. In main, if a jury had before it only evidence of possession of four grams of cocaine base, could you convict and survive a sufficiency challenge? The jury would be instructed that they may draw the inference. The jury might be instructed that they may draw an inference. And if it did, then draw that inference, and the only evidence of intent was possession of four grams of cocaine base, would that conviction be upheld in main law and survive a sufficiency review? I have not seen a case along those lines relying solely on the inference, but if you read the instruction at the four-gram threshold cutoff, then the court may draw the inference of intent to distribute. And as Olivera says, there's no reason to instruct a jury that that is a permissible inference, other than to say if you drew it, we would uphold the conviction. No, I think Olivera took it quite a step further and said it was necessarily. If the jury did draw that inference, is there any way to understand why it would be said to be a permissible inference if the main law court would then strike down the conviction? No, the main law court doesn't. It's clear that instructing with the term presumption is error, although it can be harmless error. I didn't say presumption. I said they would just say you may draw the inference based on the possession of four grams of cocaine base that he intended to distribute. If the jury then convicts and the only evidence before it was possession of four grams of cocaine base, on what basis could that conviction be thrown out? I don't know what basis. We wouldn't even know. That would suggest to me that the least of the conduct Maine allows to satisfy this element is possession of four grams of cocaine base. Except that the jury must also find that the state proved the element of intent. Now they proved it by virtue of the possession of four grams of cocaine base. I guess we maintain our differing, We just disagree that there is a distinction between a presumption, a statutory presumption, and a permissible inference. I agree with you. The jury is not required to find that. Let me ask a factual question. Let's assume these four grams are divided into little packets. Little packets. And that's typically what happens in distribution. If you have it for your own use, you haven't divided it up usually into little packets. Does that make a difference? That's what happened here, Judge Stahl, in terms of a recitation of the statement of fact. That's a means to prove the element of intent. And that's to what he pled. Correct. He pled to intent to distribute. Under the statute, if it was one packet of four grams of cocaine base, could a jury convict him of intending to distribute for having one packet? Just a simple question. It's really not. With all due respect, it's not. Because if the court goes to say Mulkerin applies and a statutory presumption is... I didn't mention Mulkerin. I didn't ask about presumptions. Can I just... No, I really want an answer to this question. In Maine, if a jury convicted someone, and all the evidence against them of intent to distribute was that they had a single packet of four grams of cocaine base, could the jury validly convict the person of intending to distribute? I haven't seen that case. It's possible. I haven't, and I... And it's possible because... It wouldn't be mere possession. It would be based on an inference valid from common sense and a finding that they found beyond a reasonable doubt the intent of the charge. So if I may pick up. So this is not four grams of cocaine. This is four grams of cocaine base. Now, there is a distinction between the two. The four grams of cocaine base can be mixed with other substances to provide a much larger quantity of drugs. Is that an accurate statement? Yes. And can I make two points? That's kind of where I was going before. One relates to Mulkern, where the two-gram of heroin possession statute. It was a possession statute, and the possession is the element of the offense, although heroin can be mixed with fentanyl, et cetera. Here, and I want to spin this back. Here, drug quantity, one, is not an element of the Maine statute or the definition of controlled substance offense in the guidelines. And then take a look back, if we're going to focus on quantity, where the lawn – so my second point was, therefore, unlike in Mulkern, we don't get to the second question of where we draw the line when there's a statutory element of possession that is defined in the statute. But then look at the guidelines. The lowest base offense level that the sentencing commission – let's look at what they did rather than what they might have thought – is for 2.8 grams of cocaine base. There's a base offense level 12. That's the same definition that controlled substance offense, defining federal offenses for which federal judges will be sentencing defendants. That's a 12, and it's twice the lowest level 6 for 2.8 grams of cocaine base. Is that for possession? No, it's – well, I don't – Under the guidelines, is that for possession? It's for any offense. It's in the drug quantity table. Sorry, Judge Bernard, 2D1.1. But this particular – It could also be trafficking. The guideline is for prohibiting – what's the phrase? Intent to distribute? Controlled substance offense that prohibits – It implicates how – it applies to enhancements for sentencing. But the 2.8 reference, which seems on point potentially, the 2.8 reference, is that purporting to describe the type of controlled substance offense referenced in the crime of – in the guideline that we're talking about? Right. Well, my point was to implicate the career offender guideline, the instant offense has to be either a crime of violence or a controlled substance offense. And so that – meaning the instant federal offense. So that's why the commission drew the lowest threshold line. It's 2.8 grams. What guideline are you referencing for that? Well, the career offender guideline is – And then where are you getting the 2.8 being what the commission meant? The drug quantity table in 2D1.1, which is – In other words, if you're within the guideline for the controlled substance offense for prohibiting with intent to distribute, you're saying that that then has a quantity analog in the guidelines that can make it higher or lower? Yeah, well, I'm just saying with drug trafficking, federal drug trafficking offenses that involve only 2.8 grams hit a base offense level 12 versus the lowest six. I'm just saying the commission could have tethered controlled substance offense definition to the drug quantity table easily. It could have tethered it to based on the type of drugs to certain threshold levels in the drug quantity table. And it didn't do so. And as Judge Salish pointed out, that – Can I just – We're talking cocaine-based and not marijuana. Do you have any – is there a federal authority, because it would be helpful to your side, to me at least if you did, of federal cases upholding convictions for federal intent to distribute controlled substance offenses in which the only evidence was 4 grams or less of cocaine base? I would have to mine facts. And so, I mean, I don't – just like I haven't seen that at the state level. I'm just – Before you answer the question, it's pretty clear you don't actually. I don't. I apologize. You haven't looked into it. We'll permit both sides to file a 28-J letter within seven days after oral argument on that point. And I might add that we are talking recidivist offenders, so it might not be unusual to see multiple small distribution counts that are then tallied for sentencing guideline purposes into a bulk relevant conduct amount. If I can go back to my question, which you've partially answered. So if a state were to conclude that 4.8 grams of cocaine base is enough to allow a conviction for intent to distribute, is there anything irrational about that? Not in this context, no. As opposed to 2 grams of cocaine or 2 grams of heroin or 10 grams of marijuana. Is cocaine base, is that quantity alone rationally related to drug distribution? And if you don't have a ready answer, I would like that to be the second topic addressed in the letter which each of you are going to file with the court within seven days. I will address that in 2020. Just off the top of my head, I'd point out that it wasn't long ago. I can't remember the 2010 or 5 grams, according to Congress implicated a five-year mandatory minimum at the federal level. But we will follow up with that in our 20HA. And we maintain that the difference here is that unlike in Mulkern and some of the other cases, that's looking at the elements of the offense which we're required to do. That's a statute that creates a trafficking by mere possession offense. And there in Mulkern, the court correctly looked at the elements of the offense. Not a hypothetical jury instruction that might have been issued at trial. And we would submit that even if you go there, the proper thing to do here would be to go to the modified categorical approach. Do what the second circuit did in Danielson. Say, all right, if you're going to treat it like a presumptive statute of presumption, like in Mulkern, let's look at those Shepherd documents here. And you'll see that if you're going to treat it like an element, that was not the element that formed the basis of Mr. Muhammad's offensive conviction. Some of your arguments are broader and implicate the differences between the categorical approach and the modified categorical approach. And whatever we say on that will have implications far beyond this case. The questions we have been asking you are directly related to the 4.8 grams of cocaine base issue, which might provide a narrower ground. Are you following me? I think I am, Judge Lynch. I'm also, I would be remiss if I didn't maintain that if you're going to treat this jury instruction like an element, that we would ask you go to the modified categorical approach. There are a number of things in the defendant's favor, but depending on the outcome of the two questions we've just asked you to answer for us, it is possible that a ruling would emerge that is no broader because we simply made assumptions. Maybe this is just so I want to make sure you understand the questions Judge Lynch is posing and what she's identifying as an area of interest on the part of the panel, I think, all three of us. Forget that there is a permissible inference jury instruction in the statute. Forget that the rule of evidence in Maine says anything about permissible inferences. In Maine there is an offense that says you can be guilty of possessing with intent to distribute cocaine base. And then imagine, which I know there is not, imagine there is a case on the books decided by the Maine law court. And the only evidence in the case to satisfy the element of possession with intent to distribute was that the person possessed four grams of cocaine base. And imagine the Maine law court upheld that conviction on a sufficiency challenge by saying four grams of cocaine base is sufficient to satisfy the element of possession with intent to distribute. That would be an erroneous instruction, I think. No. I'm sorry. Counsel, will you listen to us, please? I apologize. There's no instruction. No instruction was given. I do apologize. It's okay. There's no instruction given. Ever. Okay. It just says convict if you think he possessed with intent to distribute. The only evidence in the case was that he had four grams of cocaine base in his possession in a single packet. 4.8. Well, it's four grams. 2.8 is probably. Okay. Four grams of cocaine base. The prosecution wants to challenge, I mean, the defendant wants to challenge that conviction on the ground that the evidence was insufficient to show intent to distribute. The Maine law court, which gets to decide its own law, says that's enough. You can satisfy the element of possession with intent to distribute under Maine law for the Maine offense of possession with intent to distribute by merely showing the person possessed a single packet of four grams of cocaine base. Okay? If there were that case on the books and the defendant in this case had pled just as he pled here, would he have pled to a controlled substance that qualifies under the guideline? If he pled just as he pled here based on this record of conviction? No. Drop the shepherd issue out of the case. Okay. Stop it. Do you now? I think I understand where you're going in, but there is no instruction. It's just the issue comes up on appeal. Maine just treats this element as being capable of being satisfied by the mere possession of a single packet of four grams. If that is Maine law, is it possible for that Maine offense to qualify as an offense under the guidelines? That's what we'd like you to then say. If that were the case, why would it nonetheless qualify? One possibility is because four grams of cocaine base is a large enough quantity that one could think that was the kind of controlled substance offense the sentencing commission had in mind. If it does, you win. So it's great for you. If it doesn't, then all the other issues you're raising start to come into play. Okay? That's why we're focused on that. Thank you. I think I understand. I mean no disrespect when I keep jumping back into the shepherd. We've heard enough. Your opponent will now have his chance if he wants to take it. Thank you. Mr. Benneman, we've obviously spent a long time thinking about the case. Yes, ma'am. We've tried to distill it to an argument which may be at the heart of the case, which you will have a chance to brief. Two questions. Yes, Your Honor. Is there anything helpful you can say to us at this point? I'm happy to answer the court's questions. I'm also happy to provide the letter that the court's requested. I wouldn't mind hearing just what your take on these issues are. Your Honor, I suggest to you that under Maine law, a judge or a jury in a trial setting may convict a defendant of trafficking in Maine based solely on four grams or more of crack possession. That's what permissible inference means. You're not required to, but you may. And no additional evidence is necessary. And Judge Stahl, an individual might possess that four grams in smaller packets, not because they were distributing it, but because they are a user and just bought it and that's how it comes to them. And let me ask a question. If typically in a drug possession case, if you go to trial, as opposed to a plea, which is what we have here, there would be evidence usually from a DEA agent based on his years of experience as to what he or she views as trafficking. And that would be part of the evidence which would ultimately go to the jury. That DEA agent's statement that, from my experience, when people have this number of packets, it is typically not for personal use and that would be subject to cross-examination. But it isn't typical that you aren't going to have other evidence of what the defendant was about in that trial. The difference here, of course, was the plea. And so he pled. He pled to the charge, which was trafficking. That's what he pled to. I assume in Maine that the judge has to make findings based on what the defendant said before he can say, yes, you're allowed to plead guilty. Is that not correct? That's correct. So doesn't that make a difference as opposed to the hypothetical jury case or the plea case? Is there any difference between the hypothetical jury case, which is going to have more evidence usually, it would be a rare drug case where there isn't other evidence from the prosecution as to the background of the case. Your Honor, for a Rule 29 motion, I understand the argument for a distinction. For a categorical approach, I think not. I think under the modified categorical approach, you would be looking at only the allowable documents. The plea colloquy is one. And you look at the contents of that, not for the facts, but does it illuminate the underlying charge? So what you're basically saying is that this amount can never really reach the threshold of distribution? In and of itself. Yes, in and of itself. No, I think I'm suggesting to you that four grams or more. I'm sorry. To some, it's for purposes of the guidelines. Yeah. Even though it does satisfy it for purposes of main law, for purposes of the guidelines, this amount is too small to qualify as the kind of controlled substance offense the guidelines are speaking about. Correct. Yeah. It does not arise to intent. And I suggest that this Court's prior. Why? Well, I suggest that this Court's prior jurisprudence in the Latham case, where there was a full ounce of powdered cocaine, which the individual selling actually displayed to the undercover agents and talked about, vacated that conviction. Latham's a little bit tricky because of the issue of whether it's the same sample of distribution. But they do talk about amount. What is the relationship? I didn't learn my metric system as well as I should have. What is the relationship between one ounce of cocaine and four grams of cocaine base? It's 28 grams in an ounce. So 28 grams of cocaine. 28 grams of anything. 28 grams of cocaine was thought to be arguably too low in Latham. Correct. And that would be the same amount of cocaine base. Four grams of cocaine base would be the amount of 28 grams of cocaine. No. No. A gram is a gram no matter what the content is. Yes. But you only need four grams of a mixture containing base. But the powder in Latham happened to have been 28 grams, which is an ounce. Do we have any guidance under federal law of how to convert cocaine base to cocaine? Yes. That was the 100 to 1 ratio that went all the way back to quite a bit of litigation. But for purposes of distribution, if I was trying to get some sense of how big is... I have a sense from the case law of how many ounces or how many grams of cocaine powder one would have to have before one could start... If I have two kilos of cocaine, it starts to look pretty reasonable to think the person does not just have it for possession of their own purposes and that one could conclude that's a serious enough offense that it is the kind of thing that could qualify as trafficking or possession with intent to distribute. If I have a spec, it doesn't seem enough. So where on that spectrum is four grams of cocaine base? Do we have any guidance in federal law on that? Yes. A standard package of sugar that you would get at the concession here runs between two and four grams, a single packet. The little pink sweet and low packets, if you tear it open, that tiny bit of powder is a gram. Of course, this isn't sweet and low we're talking about. I understand. Your opponent did make a reference to a conversion table in the guidelines. Are you familiar with what she was talking about? Yes, and I suggest to you it's not really applicable here. Why not? The argument that she made is that when you go to the guideline table, any drugs below a certain starting weight are base six. Then you start your table. It happens that the table, this counts for possession, for crack starts at 2.8. That's all. So 2.8 is the threshold for possession? No. Any amount is the threshold for possession. It's just how many points you get. So it doesn't tell us anything about what the guidelines thought possession with intent to distribute would or would not be. Correct. There is nothing in federal law that does, and that's part of the point. But under main law, which is different on this, in the McLaughlin case, the law court directly said two things. They said for crack cocaine, as long as the sample measures as containing some measurable amount of base, the entire sample weight counts, not the purity part. So it could be 10% pure. It could be 3% pure. So that gets somewhat to your spec because the other is additive. The second thing they say is the legislature made a policy decision that four grams they wanted to punish harshly. That doesn't convert, however, to trafficking. For federal purposes? Yes. But, of course, that's a topic that you're both going to be addressing after you've done some more research in your letters to us. Yes, sir. Just out of curiosity, in this sugar packet you just referred to, typically how many doses of the drug would there be in that? Is that two, one, six, five? Having sat through hundreds of proffers of defendants, criminal defendants, I would suggest to you that many people who smoke crack cocaine smoke a gram per serving. But there are people who smoke more. That would arguably be four servings, which an individual could consume in a single day. Just by comparison, do you have a sense? So in Mulkern, we thought two grams of heroin was below the amount at which one could reasonably assume that the possession of just that amount would be enough to equate to the kind of controlled substance offense of distribution that the guidelines is talking about. So that was helpful. You suggested a gram per serving would be what an individual user might use in one time with respect to cocaine base. And in heroin, the quantities in heroin that are used tend to be smaller than the quantities of both powdered cocaine or crack cocaine because of the potency of heroin. Half grams are very common. Less than half grams are common. So two grams would equate on that theory of what you're saying were borne out by anything actual. That would itself be four doses. Yes. But users, of course, are different. You also allow for the possibility that those four grams are then cut with other things and then distributed. No, not with crack. In that area, I would disagree because crack is the smokable form and it won't light and smoke if you recut it with the cut. There's cuts added in the cooking process if you look at the cases that discuss cooking. The two of you can explain this. I haven't put a page limit on you. We're looking for information that will be helpful to us in deciding this case. Okay. Your time is actually up. Is there anything else you need to tell us? I would just add that I suggest to the Court that burden of proof may play a role in a decision. In this case, it may be a narrow way because the government has the burden of showing a guideline enhancement. And I would suggest that a possible finding here is that they did not satisfy that burden in this particular case based on what was submitted. What should they have done? Your Honor, just for example, there is no distinguishing in the government's argument, Olivero, from the facts in front of the Court. And, Mohammed, as you recall, the prosecutor rested on his written submission and did not engage with the Court. And perhaps there may have been an alternative advocacy. I don't want to speak for them. But they need to establish the enhancement. And I'm suggesting to you that a finding in this case could be that they failed to. The idea was that there is an uncertainty as to whether 4 grams is at a level that, like 100 grams, would be enough to satisfy the controlled substance definition in the guideline. That uncertainty goes to the benefit of the defendant. And it's incumbent on the prosecution to demonstrate that 4 grams of cocaine base is of a high enough quantity to qualify under federal law. So they need to put forward case law, et cetera, to support that. And if we had an uncertainty on that issue, your argument is they haven't then met their burden of showing that the offense they identified qualifies. Is that the idea? Exactly. And in Olivera, there was no underlying colloquy. If you had the same colloquy. Another side argued that was an issue before the District Court. Yes, I did argue that burden of proof. You argued they could not meet their burden of proof under Olivera. Okay. This is a side issue to Olivera. I understand. One could say, well, you've got to remand, because this argument just wasn't presented, really, to the District Court. And you think you did present it to the District Court. Yes. What I'm saying is the government may have chosen. You asked me what they could have done, and I'm suggesting they could have taken a different tact. I'm also suggesting under a modified categorical approach, while we don't look at the facts, we look at what is the statutes that is implicated. And so, for instance, as Judge Saul discussed, if you looked and there had been an undercover agent, if you looked in the plea colloquy and there had been an admission to a kilo. No, no, no, no, no. No, you don't want to say that. All right. Well, then I will sit down. You're making your own argument. Okay. Okay, thank you. Thank you. Thank you. Is my rebuttal time evaporated, or? How about a minute? Thank you. I would just circle back on the burden of proof and Judge Saul's comment, that the burden of proof is to a fair assessment of comparing those elements of the controlled substance offense and maize trafficking statute, as Judge Schwartzman found. It's a match-up. That satisfied the burden of proof. We introduced Shepard documents, which, turning to Judge Saul's, Mr. Muhammad pleaded guilty. So if you want to go to the modified categorical approach, if you want to assume this inference instruction is akin to an element, then we go to the modified categorical approach, and those Shepard documents show clearly that Muhammad was convicted. His offense of conviction was possession with intent to distribute, without a reference to all of this other permissible influence on these threshold direct quantities. And so we submit that, one, we don't even get to the where do you draw the line, the second question asked in Mulker. You don't even get there. Because, one, we don't have that kind of statute. We don't have a possession, trafficking by possession statute, if we're supposed to look at the elements. And, two, if you get to the modified categorical approach, you can tell which elements form the basis of Mr. Muhammad's conviction. Thank you. Thank you both. All right, Your Honor. May I ask that the Court consider eight days in light of Veterans Day? Oh, certainly. Yeah. Thank you. Yeah. Thank you.